USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/16/18_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT F. SMITH,

Plaintiff,

-against-

RITA FLYNN, JENNIFER ARMSTRONG, CARL
DUBOIS, PAUL PACHECO, CORI RESCIGNO,
FAITH WATSON, and TINA STANFORD,

Defendants.

No. 16-CV-9242 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Robert Smith, proceeding *pro se*, commenced this action on November 28, 2016

against Defendants Rita Flynn, Jennifer Armstrong, Paul Pacheco, Cori Rescigno, Faith Watson,

and Tina Stanford, employees of the New York State Department of Corrections and Community

Supervision ("DOCCS") ("State Defendants"), and Defendant Carl Dubois, Sherriff of Orange

County, alleging violations of 42 U.S.C. § 1983. Presently before this Court is a motion to dismiss

the complaint pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(1) for lack of subject

matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted by

State Defendants and a motion to dismiss the complaint pursuant to Rule 12(b)(6) by Defendant

Dubois. For the reasons set forth below, Defendants' motions are GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's complaint filed on November 28, 2016 (the

"Complaint") or matters of which the Court may take judicial notice and are accepted as true for

the purposes of this motion.

After serving five years for a parole violation, stemming from a warrant executed by Parole

Officer Defendant Rita Flynn on May 27, 2010,[1] Plaintiff was released on parole on May 27, 2015. (Compl. p. 6.) On October 31, 2015, at approximately 7:30 AM, Defendant Flynn entered Plaintiff's residence, handcuffed the Plaintiff, and conducted a search of Plaintiff's residence, with assistance from five other parole officers. (*Id.*) Upon completion of the search, Defendant Flynn seized items that she had "reasonable cause to believe [caused] [P]laintiff [to be] in violation of conditions of his parole." (*Id.* pp. 6–7.) Defendant Flynn then called Senior Parole Officer Defendant Jennifer Armstrong to report her findings and to request that Defendant Armstrong issue a warrant authorizing Defendant Flynn to arrest Plaintiff and place Plaintiff in custody to await action from the DOCCS Board of Parole ("Board of Parole"). (*Id.* p. 7.) At approximately 8:15 AM, the Plaintiff was removed from his residence and taken to the Orange County Correctional Facility ("OCC"), where Defendant Flynn lodged a certified version of the warrant and the Plaintiff was detained in the custody of Orange County Sheriff Defendant Carl Dubois. (*Id.*) Notary Public Defendant Cori Rescigno is listed as the notary on the certified copy of the 2015 warrant.

Plaintiff had questions about the 2015 "certified warrants [sic] validity" and requested and received a certified copy of the warrant.[2] (*Id.*) On February 8, 2016, Plaintiff wrote to Defendant Dubois to inform him that Plaintiff's detention was illegal and to request immediate release. (*Id.* pp. 7–8.) Sargent William Proscia, on behalf of Defendant Dubois, responded on February 11, 2016 and stated that Plaintiff's detention was legal; the parole warrant had been confirmed by the

---

[1] Plaintiff's Complaint focuses on the October 31, 2015 search, arrest, and subsequent imprisonment. However, he is seeking damages for his "unlawful imprisonment" from 2010 to 2015, and then after October 31, 2015. Plaintiff claims that the 2010 arrest warrant contains similar deficiencies to the 2015 arrest warrant. (*Id.* p. 10.)

[2] Plaintiff submitted a FOIL request to the OCC's FOIL officer, Captain Bennett, for a copy of the 2015 certified warrant lodged by Defendant Flynn. On January 14, 2016, Plaintiff wrote a letter to Captain Bennett, questioning the validity of the warrant and requesting clarification. Captain Bennett stated that a copy of the Plaintiff's letter and the warrant would be forwarded to the Board of Parole, and the Board of Parole did not respond. (*Id.* p. 7.)

OCC records staff and, pursuant to New York law, the OCC was authorized to detain the Plaintiff.[3] (*Id.* p. 8, Ex. C.) On February 12, 2016, Plaintiff replied to Sgt. Proscia and reiterated that his detention was illegal. Neither Sgt. Proscia nor Defendant Dubois responded. (*Id.* p. 8.)

On February 24, 2016, Plaintiff submitted a FOIL request for, and obtained, a copy of the certified warrant executed by Defendant Flynn on the Plaintiff on May 27, 2010 and lodged with Defendant Dubois on May 28, 2010. (*Id.*) Notary Public Defendant Faith Watson is listed as the notary on the 2010 warrant.

On April 5, 2016, Plaintiff's parole revocation hearing was held before Administrative Law Judge Edward Mevec. (*Id.* pp. 8–9.) According to Plaintiff, at that proceeding, Defendant Flynn testified that she called Defendant Armstrong requesting that Defendant Armstrong issue a warrant to authorize Defendant Flynn to take the Plaintiff into custody and detention awaiting action from the Board of Parole. (*Id.* at 9.) Defendant Flynn testified that she both prepared and signed the warrant herself and stated that the warrant had been notarized while it was still blank. (*Id.*) Judge Mevec "did not vacate the warrant," despite Plaintiffs claim that the 2015 warrant executed by Defendant Flynn and lodged with Defendant Dubois contained forgery and invalid certification.[4] (*Id.*)

On April 11, 2016, Plaintiff wrote to the DOCCS Peekskill Area Office Supervisor

---

[3] "As stated in New York Executive Law §259-I Sec 4 (b)-A person shall have been taken into custody pursuant to this subdivision for violation of one or more conditions of…parole…shall, insofar as practicable, be incarcerated in the county or city in which the arrest occurred. Also stated in NYSCCR Sec 8004.2-1-(f) Such officer shall be authorized to take such person and have him detained in any jail, penitentiary, lockup or detention pen which shall be located, insofar as practicable, in the county or city in which the arrest occurred." (*Id.* p. 8, Ex. C.)

[4] The Court takes judicial notice of Judge Mevec's decision on Plaintiff's parole violations (*In re Matter of Robert Smith*, DOCCS, Warr. # 664261 (Apr. 2016)), which is referenced in the Complaint and appended to State Defendant's Memorandum of Law in Support of Motion to Dismiss as Exhibit A. Judicial notice may be taken of documents that the plaintiff either possessed or knew about in bringing the suit, or matters that are referenced in the Complaint. *See Kleinman v. Elan Corp., plc.* 706 F.3d 145, 152 (2d Cir. 2013). Plaintiff knew about the decision on his parole violations and he also referenced the hearing and decision in his Complaint. (Compl. p. 9.)

Defendant Paul Pacheco, copying Chairperson Defendant Tina Stanford, with a description of his complaints against Defendants Flynn, Armstrong, Rescigno, and Watson. (*Id.* p. 11.) Neither Defendant Pacheco nor Defendant Stanford responded. (*Id.* pp. 11–12.)

On April 29, 2016, the Plaintiff received the Board of Parole's decision finding him guilty of violating the conditions of his parole and imposing a time assessment to December 19, 2016. (*Id.* at 12.) Plaintiff was scheduled to be conditionally released to parole supervision on August 2, 2016. (*Id.*) However, Plaintiff, a convicted sex offender, was detained beyond his August 2, 2016 conditional release date because he was unable to attain housing compliant with the residency requirements under the 2005 amendments to the Sexual Assault Reform Act ("SARA"). (*Id.*)

## LEGAL STANDARDS

### I.    Motion to Dismiss

To survive a Rule 12(b)(6) motion,[5] a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Nor must the Court credit "mere conclusory statements" or

---

[5] Although State Defendants move to dismiss the Complaint pursuant to both Rule 12(b)(1) for lack of subject-matter jurisdiction, in addition to 12(b)(6) for failure to state a claim, none of their arguments related to the Court's subject matter jurisdiction. Therefore, the Court focuses on the Rule 12(b)(6) analysis.

"[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp., plc.* 706 F.3d 145, 152 (2d Cir. 2013).

Where, as here, a plaintiff proceeds *pro se*, the court must construe the Complaint liberally and interpret it to raise the strongest arguments that it suggests. *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, " 'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## II.     42 U.S.C. § 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff

must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

## III.   Constitutional Claims

Plaintiff's § 1983 complaint is that he was subject to a warrantless search as well as false arrest and false imprisonment in violation of the Fourth Amendment, made applicable to the States by the Fourteenth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The general contours of a search and seizure under the Fourth Amendment are well-defined. A search occurs when " 'the government violates a subjective expectation of privacy that society recognizes as reasonable.' " *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A seizure occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012) (internal quotations omitted); *Harrell v. City of New*

*York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) ("It is settled law that [a] seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property.") (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)) (internal quotations omitted). The "ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)) (internal quotations omitted). The reasonableness standard invokes a " 'careful balancing of governmental and private interests.' " *Harrell*, 138 F. Supp. 3d at 488 (quoting *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992)).

"Parolees subject to terms and conditions of release 'have severely diminished expectations of privacy by virtue of their status alone.' " *U.S. v. Quinones*, 457 Fed. App'x 68, 69 (2d Cir. 2012) (quoting *Samson v. California*, 547 U.S. 843, 848 (2006)). At the same time, the State's interest in monitoring parolees are substantial, particularly in assisting the State in "reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees." *Samson*, 547 U.S. at 853.

Plaintiff also invokes the Ex Post Facto Clause and alleges that the application of the 2005 SARA amendment to him was a violation of this clause. The Ex Post Facto Clause prohibits laws that (1) retroactively alter the definition of crimes, (2) make more burdensome the punishment of a crime after its commission, or (3) deprive one charged with a crime of any defenses available according to law at the time when the crime was committed. *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). "A criminal or penal law is *ex post facto* when it is: (1) retrospective, and (2) more onerous than the law in effect on the date of the offense." *United States v. Ramirez*, 846 F.3d 615, 619 (2d Cir. 2017), *cert denied*, 137 S. Ct. 2253 (2017).

## DISCUSSION

## I.    Search of Plaintiff's Residence on October 31, 2015

State Defendants claim that the October 31, 2015 search of Plaintiff's residence does not implicate the Constitution because parolees have diminished Fourth Amendment protections. (Defendants' Memorandum of Law in Support of Motion to Dismiss ("State Defs.' Mot.") at 7.) While this Court does not agree that the search did not implicate the Constitution, construing the Plaintiff's Complaint liberally, see *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016),  the Court holds that the Plaintiff failed to plead sufficient facts to state a claim that the search was unconstitutional. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff states that the search of his residence was warrantless and unconsented.[6] (Compl. p. 6.)  However, Defendant Flynn did not require a warrant to search Plaintiff's residence.  "New York law authorizes a parole officer to search a parolee's home or person, without a search warrant, if the search is 'rationally and reasonably related to the performance of his duty as a parole officer.' " *United States v. Lambus*, 16-CV-4296, 2018 WL 3553324, at *30 (2d Cir. July 25, 2018) (quoting *People v. Huntley*, 43 N.Y.2d 175, 179–80 (1977) (noting that only those searches and seizures that are unreasonable are prohibited by the Fourth Amendment).

On October 30, 2015, Defendant Flynn conducted a home visit for Plaintiff, to ensure he was adhering to the terms of his parole, which required him to remain in his residence from October 30, 2015 through October 31, 2015. *In re Matter of Robert Smith*, DOCCS, Warr. #

---

[6] The New York conditions of release, provided to individuals prior to release on parole, state that "[a] release will permit his parole officer to visit him at his residence and/or place of employment and will permit the search and inspection of his person, residence and property." 9 NYCRR 8003.2(d). Plaintiff was presumably informed of these conditions and consented prior to his release, consistent with standard procedure. Thus, he arguably consented to the search.

664261, at 2 (Apr. 2016). The Plaintiff was not at his residence on October 30, 2015 at the time of Defendant Flynn's visit, as was required by his parole. *Id.* at 2–3. Defendant Flynn returned to Plaintiff's residence on October 31, 2015 during which time she conducted the search. *Id.* at 3. Because Defendant Flynn knew Plaintiff had violated his parole the day before, Defendant Flynn's October 31, 2015 search of Plaintiff's residence was rationally and reasonably related to the performance of Defendant Flynn's duty to monitor the Plaintiff as a parolee. *See Lambus*, 2018 WL 3553324, at \*30; *United States v. Washington*, 12-CR-146(JPO), 2012 WL 5438909, at \*9–10 (S.D.N.Y. Nov. 7, 2012) (holding that a parole officer's warrantless search of a parolee's residence was rationally and reasonably related to the performance of his duty because the parole officer knew the parolee violated the terms of his supervised release); *United States v. Stuckey*, 06-CR-339(BSJ), 2006 WL 2390268, at \*4 (S.D.N.Y. Aug. 16, 2006) (holding that a parole officer's search of a parolee's residence after learning from parolee that he was having "trouble" with another was "reasonably related" to the performance of his duties).

The seizure was also constitutional. By Plaintiff's own admission, as a result of the search, Defendant Flynn seized items that she had "reasonable cause to believe [caused] [P]laintiff [to be] in violation of conditions of his parole." (Compl. pp. 6–7.) *See Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (stating that the "ultimate touchstone of the Fourth Amendment is reasonableness.") (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)) (internal quotations omitted). Thus, both the search and the seizure were reasonable, consistent with the state's strong interest in monitoring parolees and not overly intrusive on the Plaintiff's diminished expectation of privacy. *See Samson v. California*, 547 U.S. 843, 848, 853 (2006). Plaintiff fails to state a facially plausible claim that the search violated his constitutional rights.

## II.     Arrest and Subsequent Detention

9

To prevail on a false arrest claim, a plaintiff must establish: (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994). "[F]alse arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home,* 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005).

Probable cause is a complete defense to a false arrest claim. *Bernard,* 25 F.3d at 102; *see also Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer,* 63 F.3d at 119 (internal quotation marks omitted); *see also Drummond v. Castro,* 522 F. Supp. 2d 667, 673 (S.D.N.Y. 2007).

Defendant Dubois states that Plaintiff's detention was privileged due to facially valid parole warrants (Defendant Dubois's Memorandum of Law, at 3) and State Defendants argue that Plaintiff's 2010 and 2015 arrests for parole violations were constitutional because they were based on probable cause. (State Defs.' Mot., at 9–10.) This Court agrees and, construing the Plaintiff's Complaint liberally, see *Askew v. Lindsey,* No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016), finds that the Plaintiff has failed to state a claim for false arrest or false imprisonment for both his 2010 and 2015 arrests.

Defendant Flynn arrested Plaintiff on October 31, 2015 with probable cause that Plaintiff violated his parole. (Compl. pp. 6 – 7.) She knew that the Plaintiff had violated the October 30,

2015 curfew by failing to be at his residence at that time, and a person of reasonable caution would understand this to be a parole violation. *See In re Matter of Robert Smith*, DOCCS, Warr. # 664261, at 2–3 (Apr. 2016).   Additionally, Defendant Flynn discovered, through a constitutional search at the time of Plaintiff's arrest, see discussion *supra*, items she determined provided "reasonable cause to believe [P]laintiff was in violation of conditions of his parole." (Compl. pp. 6–7.)  Thus, Defendant Flynn had probable cause to arrest the Plaintiff, regardless of the validity of the search warrant.

Plaintiff alleges that both the 2010 and the 2015 arrest warrant are invalid because they were notarized before they were completed and because Defendant Flynn signed for the issuing senior parole officers when Defendant Armstrong was in fact the issuer of the 2015 warrant and another senior parole officer was the issue of the 2010 warrant.[7]  (Compl. pp. 10–11.) He also asserts that Defendant Dubois erred in accepting custody of the Plaintiff both in 2010 and 2015 because the arrest warrants were invalid, and that Defendants Dubois, Pecheco, and Stanford ignored his complaints about his illegal detention.  (*Id.* pp. 9–10, 15.)  The Plaintiff attached both the certified and the noncertified versions of the 2010 and 2015 warrants to his complaint.[8]

Assuming that Plaintiff's allegations about the arrest warrants are true, the Plaintiff is only claiming that there are issues with the certified copies of the arrest warrants, and the issues with those certified copies are technical, insufficient to undermine the arrests because those warrants were supported by probable cause that Plaintiff had violated the terms of his parole.

---

[7] According to the Plaintiff, the penmanship used on both warrants is identical, despite the fact that the warrants were issued by two different senior parole officers and two different notaries. (Compl. pp.10–11.) Plaintiff also states that the 2015 warrant is defective for failing to include the title of the charged violation in the instrument and for being issued from a different location from what is documented on the original warrant filed in the DOCCS Peekskill Area Office by Defendant Armstrong. (*Id.* p. 11.)

[8] (Compl. Ex. A (2015 certified warrant); Ex. D (2010 certified and noncertified warrants); Ex. E (2015 noncertified warrant.))

*See United States v. Basso*, 632 F.2d 1007, 1014 (2d Cir. 1980) ("Even if the warrant application was faulty in some narrow technical sense . . . this defect should not be sufficient to void the warrant when the facts alleged in the petition and the accompanying memorandum established probable cause, as the district judge conceded, to believe that a violation had taken place."); *United States v. Broward*, 594 F.2d 345, 350 (2d Cir. 1979) (holding that an arrest made under an invalid warrant was still valid if the arresting officers had probable cause). Moreover, those elements in the warrants that Plaintiff identifies as faulty are not necessary for a valid arrest of a parolee. In New York, for a valid parole arrest, a parole officer must (1) have reasonable cause to believe that the parolee violated parole, (2) report the violation to a senior parole officer, and (3) arrange for the senior parole officer to issue the warrant. The individual issuing the warrant cannot be the same as the individual recommending the issuance of a warrant. 9 NYCRR § 8004.2(a)–(b).

For the 2010 arrest, Plaintiff provides no information about the circumstances of that arrest, including whether a Senior Parole Officer was contacted to issue that arrest warrant. *Pro se* plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Here, Plaintiff offers only his perception of the validity of the 2010 warrant and copies of the warrant itself, but does not provide sufficient factual allegations to establish deprivations of a constitutional right. Moreover, Plaintiff concedes that the 2010 arrest warrant was issued for a parole violation, making that arrest reasonable. (Compl. p. 6.) Thus, the Plaintiff has failed to state a claim for relief from the 2010 arrest warrant.

For the 2015 arrest, Plaintiff states that Defendant Flynn followed procedure and called Defendant Armstrong to request that she issue an arrest warrant. (*Id.* p. 7.) Defendant Flynn had probable cause to detain the Defendant and had an arrest warrant issued by a senior parole officer. *See* discussion *supra*; 9 NYCRR § 8004.2(a)–(b). Plaintiff failed to show that his 2015 arrest was not 'otherwise privileged' and thus failed to state a claim for relief from the 2015 arrest warrant. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Turning to the Plaintiff's false imprisonment claims against Defendants Dubois, Pecheco, and Stanford, Defendant Dubois accepted custody of the Plaintiff in 2010 and in 2015 on the authority of two facially valid warrants, which satisfied the requirements of 9 NYCRR § 8004.2 and provided sufficient authority to detain the Plaintiff. New York Executive Law §259-i(3)(a)(i) ("A warrant issued pursuant to this section shall constitute sufficient authority to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is delivered to hold in temporary detention the person named therein"). Plaintiff fails to allege sufficient facts to show that the officers accepting custody of the Plaintiff, including Defendant Dubois, would have reason to suspect or detect the alleged forgery. Defendant Dubois and the officers acted consistent with their duty in detaining the Plaintiff, subjecting him to privileged confinement. *Dupree v. City of New York*, 418 F. Supp. 2d 555, 559 (S.D.N.Y. 2006) (granting the defendant's motion for summary judgement in the plaintiff's § 1983 case for false imprisonment because the plaintiff was lawfully detained pursuant to a facially valid warrant). "It is settled that such a privileged confinement will not give rise to an action against the entity that detained plaintiff." *Id.*; *see also Knowles v. Johnson*, 08-CV-4741(PAC), 2010 WL 1050973, at *4 (S.D.N.Y. Mar. 23, 2010) (holding that, because the defendants had probable cause to arrest the plaintiff for violating the terms of his conditional release, plaintiff's

confinement was privileged and there was no false arrest or imprisonment); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 140–41 (E.D.N.Y. 2010). Moreover, confinements by correctional officials based on parole warrants are privileged. *See Kearney v. Westchester Cty. Dep't of Corr.*, 506 F. App'x 45, 46 (2d Cir. 2012). Plaintiff was detained by correction officials acting under a facially valid warrant. Thus, the Plaintiff has failed to state a claim for false imprisonment.

Plaintiff states that he alerted Defendant Dubois on February 8, 2016 and Defendants Pecheco and Stanford on April 11, 2016[9] to his concerns over the legality of his imprisonment and the warrants, but they allowed his alleged false imprisonment to continue. This conclusory statement is not sufficient to support a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). None of these Defendants, acting under the color of the law, denied Plaintiff his constitutional rights in failing to act upon Plaintiff's letters. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). First, the Plaintiff was being detained due to a valid arrest based on probable cause, as discussed *supra*. Second, for Defendants Pecheco and Stanford, "mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." *Andino v. Fischer*, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). The Court acknowledges that Defendants also presented immunity claims, but finds that, because the Plaintiff has failed to state a plausible claim for relief, the Court need not address whether the Defendants are entitled to immunity at this time.

### III. Application of SARA Residency Provisions To Defendant

---

[9] Defendant Dubois's office responded to one of these letters to inform Plaintiff that his detention was legal. *See* discussion *supra*. Defendants Pecheco and Stanford did not respond to April 11, 2016 letter. (Compl. pp. 11–12.)

Plaintiff claims that applying the 2005 SARA amendments to him for an offense for which he was convicted in 1993[10] violates the Ex Post Facto Clause. SARA originally barred affected offenders from knowingly entering into or upon any school grounds or facility or institution that serves primarily to care for minors. The 2005 amendments broadened the definition of "school grounds" to include publically accessible areas within one thousand feet of that property, effectively restricting offenders from residing within one thousand feet of schools. N.Y. Exec. Law Law § 259-c(14); *see Williams v. Dep't of Corr. and Cmty. Supervision*, 979 N.Y.S.2d 489, 492 (N.Y.Supp. Ct. 2014).

While the 2005 amendment imposes additional restrictions, the residency requirement is nonpunitive and does not violate the Ex Post Facto Clause. The amendments were enacted to protect communities, not to punish offenders. *See Wallace v. New York*, 40 F. Supp. 3d 278, 314 (E.D.N.Y. 2014); *Williams v. Dep't of Corr. and Cmty. Supervision*, 24 N.Y.S.3d 18, 23 (N.Y.App. Div. 1st Dep't 2016) (noting that the justification for the 2005 amendment provides that "[t]here is a need to prohibit those sex offenders who are determined to pose the most risk to children from entering upon school grounds or other areas where children are cared for.") (quoting Sponsor's Mem., L. 2005, ch. 544, http://public.leginfo.state.ny.us/menugetf.cgi). Because the 2005 amendment is not a punishment, it cannot lead to an Ex Post Facto Clause violation.[11] [12]

---

[10] The Court takes judicial notice of the public docket for Plaintiff's 1993 conviction. http//nysdoccslookup.doccs.ny.gov/.

[11] Defendants also claim that there can be no Ex Post Facto violation because there is no constitutional right to parole. While there is no inherent federal right to parole, states are able to create a liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment for inmates. *Swarthout v. Cooke*, 562 U.S. 216, 219–20 (2011); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979).

[12] In addition to arguing that Plaintiff's Complaint should be dismissed under Rule 12(b)(6), State Defendants also argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Court held, "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. Individuals bringing § 1983 claims to challenge parole

**CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss the Complaint are GRANTED in their entirety. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coopedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully directed to terminate the motions (Doc. Nos. 31, 41) and to terminate the case. The Clerk of Court is also directed to mail a copy of this Opinion and Order to Plaintiff at his address listed on ECF and show proof of service on the docket. This constitutes the Court's Opinion and Order.

Dated: August 16, 2018                                   SO ORDERED:

     White Plains, New York

8/16/18    NELSON S. ROMÁN

United States District Judge

---

revocations must also still meet the Heck v. Humphrey standard. *Lee v. Donnaruma*, 63 Fed. App'x 39, 41 (2d Cir. 2003) "Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside." *Id.* (citing *Sumter v. Marion*, 98-CV-2744(RPP), 1999 WL 767426, *5 (S.D.N.Y.1999); *see also McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 160–61 (5th Cir.1995)). As the Plaintiff has failed to allege a plausible claim against these Defendants, the Court need not address the *Heck* analysis at this time.